Betty C. Stockvis v. Commissioner.
Stockvis v. Commissioner
Docket No. 20316.
United States Tax Court
1951 Tax Ct. Memo LEXIS 342; 10 T.C.M. (CCH) 74; T.C.M. (RIA) 51023; January 25, 1951
Jay T. McCamic, Esq., and Margaret F. Luers, Esq., for the petitioner. John J. Madden, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined against petitioner income tax deficiencies in the amounts of $10,930.92 and $7,015.19 for the calendar *343 years 1945 and 1946, respectively. The issues presented are whether the respondent erred: (1) In adding $13,715.52 to petitioner's income for 1945 by reason of an adjustment reducing petitioner's opening inventory in that amount for the year 1945. (2) In the alternative, if the adjustment in the first issue is sustained, in failing to reduce the December 31, 1945 inventory by $4,697.68 and the December 31, 1946 inventory by $2,118.88. (3) In failing to allow as deductions in each of the years 1945 and 1946, the full amounts of salaries accrued and credited under a management contract. (4) In disallowing deductions in the amounts of $8,709.43 for 1945 and $8,927.95 for 1946 representing contributions to an employees' pension plan. At the hearing and also by amended answer thereafter, filed, respondent conceded that petitioner is entitled to deduct $102.51 and $163.52 as interest in the years 1945 and 1946, respectively, and to deduct $815.79 in 1946 as New York State income taxes. Petitioner's allegations of error as to respondent's disallowance for each of the years 1945 and 1946, of claimed interest deductions in amounts greater than those conceded by respondent; of *344 claimed Virginia State taxes; and of claimed depreciation, are deemed to have been abandoned since no evidence has been adduced with respect thereto. Findings of Fact The petitioner, an individual and a practicing attorney, resides in Alexandria, Virginia, and maintains an office in Washington, D.C. Her income tax returns for the calendar years 1945 and 1946 were duly filed with the collector of internal revenue at Baltimore, Maryland. On December 26, 1944, the petitioner purchased all the shares of stock of the Lovejoy Patent Specialty Co., Inc. of Hoosick Falls, New York, (hereinafter referred to as Lovejoy) for an agreed consideration of $250,000, with the intention of liquidating Lovejoy and operating as a sole proprietorship the company's business of manufacturing chaplets and other small articles sold to foundries. The stock purchase was arranged by petitioner's father and legal advisor, Howe P. Cochran, who fixed the purchase price on the basis of the value of the company's plant and various assets less liabilities. The petitioner's purchase of Lovejoy stock was made pursuant to her written offer dated December 21, 1944 and a written acceptance dated December 26, 1944 by *345 the then stockholders of Lovejoy, namely, E. M. Ashworth, Leroy P. Brownell, Elwin S. Bentley and Mrs. Marion A. Brownell. Under the terms of that agreement petitioner agreed to buy the stock for $250,000 payable $100,000 before January 1, 1945 and $25,000 each year until paid; to employ Ash. worth, Brownell and Bentley at the present salaries paid by Lovejoy subject to adjustment in the event of increased or decreased sales on a 1943-1944 basis until they quit or until retirement date under a pension plan established by Lovejoy; to give those three men full charge of operations until the stock was fully paid for; to pay to those three men in addition to their salaries one-quarter of all profits before taxes but after all proper charges and divided in the same proportions as their salaries and accruable currently on the books and payable after full payment of the purchase money for the stock; to let the sellers of the stock hold the shares as security during the liquidation of Lovejoy; not to mortgage or pledge the property after liquidation without the sellers' consent until after payment for the stock; and to take over Lovejoy's liability in regard to its employees' pension trust; *346 and the sellers of the stock agreed to faithfully operate the property; and to transfer the stock to petitioner and allow her to liquidate Lovejoy and operate the business as a sole proprietorship within the limits of her agreement. The sellers of the stock also agreed to Lovejoy's making an immediate first liquidating dividend of $100,000 cash to petitioner to be applied by her as a down payment to them on the stock. On December 26, 1944, at a special meeting, the stockholders of Lovejoy adopted a "Plan of Liquidation" which provided inter alia that one liquidating dividend be made in 1944, that complete final liquidation of the company be made before the end of 1945, and that the liquidating dividend be in complete redemption and cancellation of the stock after making provision to meet all its responsibilities. A copy of such plan was filed with respondent, on or about January 26, 1945, together with an information return, Form 966, of Lovejoy signed by Betty C. Stockvis as president. Pursuant to the plan of liquidation and on January 31, 1945 Lovejoy distributed all its manufacturing assets to its sole stockholder, the petitioner. Such assets included the company's closing inventory *347 on that date in the total amount of $61,606.91 based on cost to the company for raw materials, goods in process and finished goods on hand. Thereafter petitioner operated the business as a sole proprietorship. The inventory so distributed to petitioner by Lovejoy was set up on her books as an opening inventory on February 1, 1945 in the total amount of $75,322.43 as representing the cost thereof to her; that is, the allocable part of the $250,000 agreed consideration for the Lovejoy shares based on the value of that company's underlying net assets. The amount of $75,322.43 was the fair market value of the inventory as of the date distributed to petitioner on January 31, 1945 under the plan of liquidation of Lovejoy. The petitioner's closing inventories on December 31, 1945 and on December 31, 1946 were based on cost to her and also on the figures appearing in the February 1, 1945 opening inventory to the extent that items therein appeared in the subsequent inventories. The petitioner's return for the calendar year 1945 reported no gain or loss on her receipt of assets distributed in liquidation of Lovejoy. In reporting income derived from her sole proprietorship business for 1945, *348 she reported an opening inventory of $75,322.43 at February 1, 1945 and a closing inventory of $74,643.03 at December 31, 1945. In reporting income derived from that business for 1946 she reported an opening inventory of $74,643.03 and a closing inventory of $55,576.44. In determining the deficiencies involved herein respondent adjusted the opening inventory at February 1, 1945 by decreasing it from the reported $75,322.43 to the amount of $61,606.91 and added the difference of $13,715.52 to petitioner's income for the calendar year 1945. In making that adjustment the respondent used Lovejoy's closing inventory at January 31, 1945 as petitioner's opening inventory at February 1, 1945. Respondent made no corresponding adjustments in petitioner's closing inventory at December 31, 1945 or in its opening and closing inventories for 1946, to the extent that such inventories included goods embraced in the opening inventory at February 1, 1945, as adjusted by respondent. Under the terms of the December 26, 1944 stock purchase agreement, hereinbefore set out, petitioner agreed that Ashworth, Brownell and Bentley would be employed as the business managers and would be compensated at their *349 then present salaries, subject to adjustment in the event of increased or decreased sales on a 1943-1944 basis, plus a 25 per cent share of net profits accruable currently on the books in proportion to their respective salaries. The aggregate salaries of those three men amounted to $52,758.95 a year on the basis of average sales for 1943-1944. Immediately after petitioner took over operation of the business as a sole proprietorship the managers raised serious objections to her interference in matters of policy towards labor and production which would result in decreased sales and thereby a downward adjustment in their salaries. The petitioner, of necessity, orally agreed with the managers that their salaries would not be cut back in proportion to any decrease in sales and thereby their basic salaries were continued in the aggregate amount of $52,758.95 during 1945 and 1946. In reporting income derived from petitioner's sole proprietorship business for 1945 the schedule attached to her 1945 return disclosed a deduction of $64,567.48 for "Management contract: Brownell, Ashworth, Bentley & Cochran". In determining the deficiency for 1945 the respondent allowed an additional deduction *350 of $5,500.39 on account of that item, which was arrived at by determining the amount of $36,921.29 as representing paid and accrued salaries based on 1945 sales and adding thereto three times in the sum of $33,146.58 as representing 25 per cent shares of net profits accrued to Brownell, Ashworth, Bentley and Cochran under the management contract resulting in a total of $70,067.87 allowed under that contract and an understatement of $5,500.39 as reported on petitioner's return. In reporting income derived from petitioner's sole proprietorship business for 1946 the schedule attached to her 1946 return disclosed the following deductions: "Salaries Paid $22,650.00"; "Salaries Accrued $30,108.95"; and "Management Contract, Luers $9,609.28, Ashworth, Brownell, Bentley $10,609.28". In determining the deficiency for 1946 the respondent in effect disallowed $2,962.07 of the total of the above enumerated items. Respondent determined the amount of $39,906.87 as representing paid and accrued salaries based on 1946 sales and found that petitioner's return overstated such salaries in the amount of $12,852.08. Respondent further determined that petitioner's return understated by $9,890.01 the amount *351 allowable under the management contract. The difference between such overstatement and understatement in the sum of $2,962.07, was disallowed as a deduction. On February 14, 1945, Betty C. Stockvis, an individual doing business as the Lovejoy Patent Specialty Company and designated the "Employer", as the first party and three individuals designated the "Trustees" parties of the second part, executed a "Pension Plan Trust Agreement" which set forth inter alia, that the Employer agrees to assume the pension plan established by Lovejoy corporation as embraced in the latter's pension trust agreement of March 24, 1941 and amendments thereto, made a part of and attached to that instrument of February 14, 1945; that the Trustees (the same in both instruments) agree to continue to act in the capacity set out in the Lovejoy pension trust agreement and to continue to administer the pension plan under the agreement of February 14, 1945; and that the parties agree that the word "Employer" whenever used in the Lovejoy trust agreement as amended shall be read to mean Betty C. Stockvis doing business as the Lovejoy Patent Speciality Company. The Lovejoy employees' pension trust agreement mentioned *352 in the next preceding paragraph was executed by that corporation and three designated trustees on March 24, 1941 and was amended by those parties successively on April 24, 1942 and February 14, 1945. The last amendment was made effective as of January 1, 1944. Upon Lovejoy's request the respondent herein issued rulings, dated June 5, 1941 and February 17, 1945, that the plan met the requirements of section 165 of the Internal Revenue Code, as amended, and that the corporation's contributions thereto would be deductible from gross income under section 23 (p) of the Code. The Lovejoy employees' pension plan trust agreement as amended provided, inter alia, that an "Employees' Trust is hereby established" with the employer contributing thereto a sum "calculated by actuaries" as the amount necessary to cover the first year's current cost of pensions or annuities under the trust; that the trustees agree to administer the trust fund in strict conformity with section 165 of the Internal Revenue Code and "for the purposes set out herein solely for the exclusive benefit of the employees who are beneficiaries hereunder"; that every employee not *353 taken into the trust as a beneficiary on or after March 24, 1941 "shall be and become a beneficiary of the trust on the 24th day of March next following the date upon which he shall have completed a period of twelve months of continuous service with the Employer"; that as to all the employee-beneficiaries the trustees agree "to invest the sum set aside for each employee as provided herein in an individual annuity contract", written by a New York licensed insurance company; that the trustees agree that the annuity contracts shall be as nearly alike as possible in basic provisions and shall "operate to the sole benefit" of the employee-beneficiary for whom purchased so as to provide for an annuity until death with 10 years certain annuity payments guaranteed upon reaching a specified retirement age and further provide, if he die before reaching retirement age, for payment to the employee's estate or designated beneficiary a certain amount on account of the premiums paid on the annuity contract; that the amount of the annuity for each employee-beneficiary shall be arrived at on the basis inter alia of a formula of 20 per cent of his yearly wages, salary or compensation after deducting *354 the first $600 as being adequately compensated for by Federal Social Security; that the employer agrees to pay over to the trustees on or before March 28th of each succeeding year "a sum sufficient to carry the pension plan for the current year" or notify them that the contribution would not be made; that the trustees agree that upon receipt of the employer's yearly contribution, they will apply the same to the payment of the "current premiums on such annuity policies" or in the event of the employer's failure to pay over a sufficient sum to meet current premiums to notify the insurance company and exercise the option to take paid-up annuities or cash surrender value for each beneficiary respectively or at the election of any beneficiary to surrender the policy to him for continuance at his own cost; that if any employee-beneficiary be paid off temporarily he shall be continued under the plan; that if any employee-beneficiary be dismissed for cause as defined, the trustees may pay him the cash surrender value of his annuity contract or deliver the contract to him for his own continuance; that if any employee-beneficiary voluntarily severs his connection with the employer before reaching *355 retirement age, the trustees shall pay over to him a prescribed portion of the cash surrender value of his annuity contract and retain the balance thereof; that the trustees agree that all insurance company dividends and funds retained from cancellation of policies due to severance by an employee, will be applied without discrimination to the benefit of all the beneficiaries of the trust in such a manner as not to violate section 165 of the Internal Revenue Code, that the trustees shall serve without compensation but that reasonable percentage and a reasonable per diem for the trustees shall be paid by the employer; that section 165 of the Internal Revenue Code and lawful regulations pertaining thereto are included by reference for guidance of the trustees to the end that the trust shall be a tax free employees' trust thereunder; that the trust may be amended but not so as to allow any reversion to the employer of its contributions; that the trustees are invested with various designated powers for the proper administration of the trust; that the trust shall continue until the last employee-beneficiary shall have reached retirement age or *356 have died or upon failure of the employer to contribute a sufficient sum to meet current costs; that in the event of dissolution of the trust and after paying all expenses, any funds on hand not otherwise disposed of by terms of the instrument shall be divided among the beneficiaries in proportion to the contributions made for them respectively; that if within 10 years after the original agreement the pension plan be terminated or if any of the 25 highest paid employees sever his employment with the employer, no distribution shall be made to a beneficiary in excess of a prescribed maximum amount of the employer's contributions for such beneficiary; and that every beneficiary of the trust shall have the right to designate a person to receive his benefits under the trust in the event of his death. The petitioner requested the respondent herein to rule with respect to the pension trust and under date of January 10, 1946, respondent ruled that the pension trust for the benefit of employees of Betty C. Stockvis d.b.a. Lovejoy Patent Specialty Company, established under the indenture executed by her on February 14, 1945 did not meet the requirements of and was not entitled to exemption *357 under section 165 of the Internal Revenue Code, as amended, since in his opinion the plan descriminated in favor of Ashworth, Bentley and Brownell, the supervisory and highly compensated employees, and was not for the benefit of the employees in general. For each of the years in question the trustees under the pension plan determined the amount to be contributed by petitioner and to be credited to the account of each employee-beneficiary as the current cost of his annuity arrived at under the plan's prescribed formula based on the employee's yearly wages, salary, or compensation. For the eleven month period February 1 to December 31, 1945 such amount totalled $9,257.13 of which $5,396.86 was for the benefit of Ashworth, Bentley and Brownell who were general managers of the business. For the calendar year 1946 such amount totalled $9,487.77 of which $5,887.48 was for the benefit of those same three persons. The petitioner actually paid to the employees' pension trust fund, the sum of $8,709.43 for the eleven month period February 1 to December 31, 1945 and $8,927.93 for the calendar year 1946. On petitioner's tax returns for the calendar years 1945 and 1946 *358 and more specifically in the respective schedules attached thereto pertaining to her sole proprietorship business, petitioner deducted the amounts of $8,709.43 for 1945 and $8,927.93 as contributions to employees' pension plan. In determining the deficiencies involved herein respondent disallowed the full amount of those claimed deductions on the ground that the pension plan did not meet the requirements of section 165 (a) of the Code. Opinion The first issue herein involves the respondent's determination that petitioner had additional unreported income in the amount of $13,715.52 for 1945, by reason of his adjustment in petitioner's opening inventory on February 1, 1945, namely, by reducing the reported amount of $75,322.43 to the amount of $61,606.91. The latter figure represented the amount of the closing inventory on January 31, 1945 of Lovejoy corporation which, on that date, transferred such inventory together with other assets to petitioner. On December 26, 1944, petitioner purchased all the shares of stock of Lovejoy for $250,000 based on the value of the underlying assets less liabilities. The stock purchase was made for the purpose of liquidating Lovejoy and taking *359 over its business as a sole proprietorship. On January 31, 1945, Lovejoy distributed to its sole stockholder, the petitioner, all of its manufacturing assets including its closing inventory in the amount of $61,606.91 based on cost to it. Such distribution was made pursuant to a plan of liquidation which contemplated liquidating dividends in complete redemption and cancellation of Lovejoy stock after making provision to meet all its liabilities. The parties are in agreement, and under the facts we think rightly so, that Lovejoy's transfer of its manufacturing assets to its sole stockholder, the petitioner, on January 31, 1945, was a liquidation distribution. The parties differ as to petitioner's basis for the inventory received as a part of the mixed aggregate of property so distributed to petitioner. Respondent cites no authority in support of his determination and in effect contends only that it should be sustained for failure of proof. Petitioner contends that the facts establish that her correct opening inventory on February 1, 1945 was in the amount of $75,322.43 as claimed on her return. Lovejoy's liquidation distribution to petitioner constituted payment in exchange for *360 her shares of stock under section 115(c) of the Internal Revenue Code, which resulted in recognizable gain or loss to petitioner, under section 112(a) of the Code, determined in amount by the difference between her cost basis for the stock and the fair market value of the distributed property on the date received in exchange therefor, under section 111 of the Code. See Albert Fleming, 4 T.C. 168, affirmed 153 Fed. (2d) 361; and Anna L. Dirksen, Executrix, 24 B.T.A. 1152. Apparently, in the instant case, the fair market value of the aggregate mixed properties so received by petitioner was equal to her cost basis for the stock resulting in no realized gain or loss on that transaction, for none was reported by petitioner or determined by respondent and in any event there is no issue herein with respect thereto. However, the fair market value of the property so received by petitioner constitutes her basis for determining gain or loss on any subsequent disposition thereof. See Peeler Hardware Co., 5 T.C. 518, affirmed 155 Fed. (2d) 974; Vonnegut Hardware Co., 28 B.T.A. 784, 787, petition *361 for review dismissed, 74 Fed. (2d) 1012; and Flemmon E. Gloyd, 19 B.T.A. 966, affirmed 63 Fed. (2d) 649. This proceeding involves only a portion of the aggregate mixed properties so received by petitioner, namely, the inventory of raw materials, goods in process and finished goods. The record herein establishes to our satisfaction and we have found as a fact that such inventory had a fair market value of $75,322.43 when received by petitioner on January 31, 1945 as part of the liquidating distribution by Lovejoy. Accordingly, on the first issue, we hold that petitioner correctly used the amount of $75,322.43 as her opening inventory on February 1, 1945 and that the respondent erred in adjusting such inventory to the amount of $61,606.91 and in adding the sum of $13,715.52 to petitioner's income for 1945. This conclusion obviates the necessity of passing upon petitioner's second assignment of error, in the alternative. The third issue herein involves an assignment of error that respondent failed to allow as deductions in each of the years 1945 and 1946 the full amounts of salaries accrued and credited under a management contract. As presented *362 by the parties the only question raised by this issue is the determination of the proper amount of salaries paid and accrued to the managers of petitioner's sole proprietorship business, that is, whether under the original management contract as determined by respondent or under that contract as subsequently modified as contended by petitioner. As to the basic salaries of Ashworth, Bentley and Brownell, the facts show that under the stock purchase contract of December 26, 1944 petitioner agreed to employ them at their then present salaries, which totalled $52,758.95 a year based on 1943-1944 sales, subject to adjustment in the event of increased or decreased sales. However, such contract was modified by subsequent agreement of the parties whereby petitioner agreed not to reduce their salaries in proportion to any decrease in sales and thereby their basic salaries were continued in the aggregate amount of $52,758.95 during 1945 and 1946. In determining the deficiencies herein respondent allowed deductions of $36,921.29 for 1945 and $39,906.87 for 1946 as paid and accrued salaries of those three men based on 1945 and 1946 sales, respectively. We hold that respondent erred in determining *363 such amounts based on sales and in failing to allow a deduction of $52,758.95 in each of the years 1945 and 1946 as the aggregate amount of the paid and accrued basic salaries of the above-mentioned three men. Further, under the contract of December 26, 1944, petitioner agreed to pay Ashworth, Bentley and Brownell as additional compensation as business managers, a 25 per cent share of net profits accruable on the books in proportion to their respective salaries. From the petitioner's returns filed and the respondent's determination it appears and is not disputed herein that Cochran, during 1945, and Luers, during 1946, also had a management contract with petitioner with compensation based on a percentage of net profits. Since petitioner's net profits derived from her sole proprietorship business for 1945 and 1946 must be redetermined in a recomputation pursuant to this opinion, under Rule 50, it follows as a matter of course and we so hold, that the compensation of each of the above five named persons based on a percentage of net profits, be recomputed for 1945 and 1946 respectively, under Rule 50. The fourth and last issue herein involves respondent's disallowance of claimed deductions *364 of $8,709.43 for 1945 and $8,927.95 for 1946 which amounts were actually paid by petitioner as contributions to an employees' pension trust. Section 23(p)(1)(A) of the Internal Revenue Code provides for the deduction in the taxable year when paid, of an employer's contribution to an employees' "pension trust," subject to certain limitations as to amount, provided the trust is exempt under section 165(a) of the Code, as amended. [1] This issue, as presented by the parties, involves the question of whether the pension trust meets the requirements of section 165(a), supra, and more particularly the requirement of subsection 165(a)(4), supra, that the "contributions * * * do not discriminate in favor" of the employer's "supervising" or "highly compensated employees," namely, Ashworth, Bentley and Brownell, the managers of petitioner's sole proprietorship business. *365 The petitioner's "Pension Plan Trust Agreement" executed on February 14, 1945 expressly incorporates therein and continues in effect the provisions of the employees' pension trust as established and amended by the Lovejoy corporation. With respect to the corporation that pension trust plan as amended, was approved by respondent in a ruling dated February 17, 1945, as constituting a tax exempt trust under Section 165(a), supra, but with respect to petitioner herein respondent ruled, on January 10, 1946, that it was not entitled to exemption because the plan discriminated in favor of Ashworth, Bentley and Brownell, the supervisory and highly compensated employees, and was not for the benefit of employees in general. In his notice of deficiency respondent disallowed the claimed deductions for contributions on the ground that the pension plan did not meet the requirements of section 165(a), supra. On brief, respondent contends principally that the pension plan was not for the exclusive benefit of employees and discriminates in favor of highly paid employees, while petitioner contends to the contra. The petitioner's employees' pension trust plan is extensively set forth in our findings *366 of fact. Briefly and as pertinent to the issue involved, the pension trust was for the exclusive benefit of every employee who completed one year continuous service with the employer; it provided for each employee-beneficiary an individual annuity contract similar in basic beneficial provisions and provided for a retirement annuity in an amount arrived at by a prescribed formula involving a fixed percentage of his yearly compensation with the premiums thereon calculated by actuaries; it provided for contributions by the employer in an amount sufficient to cover the annual premiums on all the annuity contracts and no part of the trust fund could revert to the employer; in general it provided for equal rights and privileges for each employee-beneficiary in case of his dismissal or voluntary severance of employment; and in the event of dissolution of the trust it provided that any funds on hand not otherwise disposed of, be divided among the beneficiaries in proportion to contributions made for them respectively. In short, the pension trust was established and operated for the exclusive benefit of every employee completing one year continuous service with the employer, the terms of *367 the trust applied equally to every employee-beneficiary, and the only distinction made between each employee-beneficiary was that the contributions made on his behalf and the benefits derived varied uniformly in relation to his yearly compensation. Subsection 165(a)(5), supra, specifically provides that such a distinction as between employee-beneficiaries shall not be considered as discriminatory within the meaning of subsection 165(a)(4), supra. Accordingly, the larger contributions made on behalf of petitioner's managers solely on the basis of their larger salaries, did not result in the pension trust plan being discriminatory in favor of such managers. Cf. Volckening Inc., 13 T.C. 723. In our opinion the employees' pension trust meets the requirements of and is exempt from tax under section 165(a), supra. On this issue we hold that respondent erred in denying the claimed deductions of $8,709.43 for 1945 and $8,927.95 for 1946 as contributions actually paid to the employees' pension trust, but only to the extent that such sums come within the limitations placed on the amount of such deductions as provided in section 23(p)(1)(A), supra. The amounts of the allowable *368 deductions will be determined in the recomputation under Rule 50. Decision will be entered under Rule 50. Footnotes
1. SEC. 165. EMPLOYEES' TRUSTS. (a) Exemption From Tax. - A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary - (1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan; (2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries; (3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under the subsection which benefits either - (A) 70 per centum or more of all the employees, or 80 per centum or more of all the employees who are eligible to benefit under the plan if 70 per centum or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding five years, employees whose customary employment is for not more than twenty hours in any one week, and employees whose customary employment is for not more than five months in any calendar year, or (B) such employees as qualify under a classification set up by the employer and found by the Commissioner not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; (4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees. (5) A classification shall not be considered discriminatory within the meaning of paragraphs (3) (B) or (4) of this subsection merely because it excludes employees the whole of whose remuneration constitutes "wages" under section 1426 (a) (1) (relating to the Federal Insurance Contributions Act) or merely because it is limited to salaried or clerical employees. Neither shall a plan be considered discriminatory within the meaning of such provisions merely because the contributions or benefits of or on behalf of the employees under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation, of such employees, or merely because the contributions or benefits based on that part of an employee's remuneration which is excluded from "wages" by section 1426 (a) (1) differ from the contributions or benefits based on employee's remuneration not so excluded, or differ because of any retirement benefits created under State or Federal law. (6) A plan shall be considered as meeting the requirements of paragraph (3) of this subsection during the whole of any taxable year of the plan if on one day in each quarter it satisfied such requirements.↩